# H. E. THORNTON *v.* DEPARTMENT OF REVENUE

A. C. Goodrich, Bend, and F. P. Stager, Salem, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, Oregon, represented defendant.

Decision part for plaintiff and part for defendant rendered December 7, 1970.

LOREN D. HICKS, Judge Pro Tempore.

This is an appeal to determine the true cash value

as of January 1, 1968, of 640 acres of land owned by plaintiff. The property is located in Deschutes County about 35 miles south of Bend and four miles west of U.S. Highway 97. The terrain is level, covered with jack pine trees with some open meadowland. In January 1968, the property had access by paved county road. Water and utilities were available.

The parties agree that large parcels of similar land in the area were selling to land developers and that the best use of plaintiff's land at the time in question was for future development of rural recreational home sites. The parties also agree that land values in the area were increasing as much as 10 percent per year.

The county assessor valued plaintiff's property at $200 an acre. The board of equalization reduced this to approximately $150 an acre. On appeal by the assessor, the Department of Revenue reinstated the assessor's value of $200 an acre. Plaintiff's complaint alleged that the per acre value on January 1, 1968, was $147.

The assessment of plaintiff's property is controlled by the following sections of Oregon Revised Statutes and regulations of the Department of Revenue:

ORS 308.232:

"All real and personal property within each county shall be assessed at 100 percent of its true cash value."

ORS 308.205:

"True cash value of all property, real and personal, means market value as of the assessment date. True cash value in all cases shall be determined by methods and procedures in accordance

with rules and regulations promulgated by the Department of Revenue. * * *"

Reg 308.205 (A):

"1. Definitions:

"(a) 'Market value' as a basis for true cash value shall be taken to mean the amount of money or money's worth for which property may be exchanged within a reasonable period of time under conditions where both parties to the exchange are able, willing and reasonably well-informed.

"(b) 'Immediate market value' of property exists when there are sales of comparable properties at times and places which are reasonably relevant under the existing circumstances.

"2. Methods and Procedures for Determining True Cash Value:

"Real property shall be valued through the market data approach, cost approach and income approach. Any one of the three approaches to value, or all of them, or a combination of approaches, may finally be used by the appraiser in making an estimate of market value depending upon the circumstances."

Both the plaintiff and the assessor caused the property to be appraised by a qualified appraiser using the market data approach of comparable sales. Each appraiser used six sales, three of which were common to both sides, and each appraiser had three sales not used by the other. The total of nine sales covered a range in per acre price from $81.25 up to $202.50. One sale, at $200 an acre, occurred in 1964, the others were in 1966 and 1967. Two of the sales were for cash; one at a price of $100 an acre, the other $192 an acre. The other seven sales were on contract, four of which contained release clauses in which the seller agreed to release title to portions of the prop-

erty upon payment of additional amounts. Contract sales without release clauses were at a price of $81.25, $137.50 and $202.50. Those 'with release clauses were for $190, $190, $200 and $200 an acre.

The plaintiff contends that installment contract sales should carry less weight as comparables than sales for cash, and that contracts with release clauses should carry less weight than those without such clauses. It is plaintiff's theory that land developers will agree to pay a higher price for land they can purchase on contract, especially when the contract will contain a release clause, because such an arrangement minimizes the purchaser's personal investment in the development and helps him deliver clear title to the lots as he sells them. Plaintiff contends that such sales are evidence of future value rather than of present value and should be discounted by 20 to 25 percent when being used to fix present true cash value of assessed land.

■■■ It is the opinion of the court that in the search for true cash value of land to be taxed it is improper to assign an arbitrary percentage factor to a sale because it is made on conditional sales contract or because the contract contains a release clause. In any given case such circumstances may or may not have materially affected the price. Each sale used in a market data appraisal must be subjectively and individually evaluated to determine the weight it merits in that particular valuation. There may be some logic in plaintiff's argument that cash sales are a better measure of what a willing buyer would pay a willing seller for equivalent land. However, the statutes and regulations do not require that cash sales be given added weight in evaluating market comparables, and

the evidence in this case does not support plaintiff's theory that they should be so weighted here.

■ Value is a subjective measure created in the minds of buyers and sellers. In almost every sale of real property there are significant considerations besides the bare value of the land that affect the price paid. It is difficult for the market approach appraiser to discover these subtle considerations. If he discovers them, the weight to be given them in each case is a matter of personal judgment in light of the existing circumstances. The appraiser must make a fair, reasonable and educated estimate of value in each case based upon all the market data available to him. He must exercise his best judgment in comparing the subject property with relevant sales of similar properties and in evaluating the various circumstances and terms of the sales and the similarities and dissimilarities of the properties.

After consideration of the evidence in this case, the pertinent statutes and regulations, *supra*, and giving particular attention to the best use of plaintiff's land, its location, accessibility and tree cover, land values in the area, demand and supply of such land in the area, and all the comparable sales used by both sides, the court finds that the plaintiff has proved by a preponderance of the evidence that the assessor's valuation of the subject property for the tax year 1968-1969 was excessive and that the assessment should be adjusted.

It is the finding of the court that the true cash value of plaintiff's property on January 1, 1968, was $185 an acre.

The order of the Department of Revenue is modified accordingly.